USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 21, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
UNITED STATES OF AMERICA and the STATE
OF NEW YORK ex rel. LEONARD A. PELULLO,

         Plaintiff,

         -v-

AMERICAN INTERNATIONAL GROUP, INC.,
STARR INTERNATIONAL CO., INC., C.V.
STARR & CO., INC., MAURICE "HANK"
GREENBERG, HOWARD I. SMITH, AND MEL
HARRIS,

         Defendant.

------------------------------------------------------------------ X

16-cv-5694 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

    Before the Court are motions to dismiss filed by defendants American International Group, Inc. ("AIG") (ECF No. 67), Mel Harris (ECF No. 70), C.V. Starr & Co., Inc., Starr International Co., Inc., Maurice "Hank" Greenberg, and Howard I. Smith (ECF No. 63). For the reasons set forth below, the Court finds that this lawsuit is an entirely frivolous qui tam action with no basis in fact or law; accordingly, the motion to dismiss is GRANTED.

I.     BACKGROUND

    In his complaint, relator, Leonard A. Pelullo, weaves together a variety of baseless and disjointed allegations under the False Claims Act ("FCA") and securities laws. (See ECF No. 27.) Taken together, relator seems to allege that, based on misconduct that occurred several decades ago, defendants made false claims to the government, violating the federal FCA, the state FCA, and federal

securities regulations, and causing the 2008 financial crisis. Stated briefly, relator alleges that AIG was "infiltrate[ed] . . . by Organized Crime for more than twenty-five years" with the consent of defendant Maurice "Hank" Greenberg, AIG's former Chairman and CEO. (Second Amended Complaint ("SAC"), ECF No. 27, ¶ 8.) He claims that defendants and their conspirators allowed this "infiltration," underwrote insurance policies for entities controlled by the Mafia, manipulated AIG's books to conceal these transactions, concealed losses, filed false and misleading reports and financial statements with the SEC, withheld information during the negotiations that culminated in AIG's 2006 settlement with the government, misrepresented AIG's financials in connection with a 2009 stock purchase agreement, and filed a lawsuit "designed to fraudulently obtain money from the Federal Reserve Bank and the United States." (Id. ¶ 12.) Incredibly, relator further alleges that the 2008 AIG bailout would never have happened had the government known about AIG's purported connections to organized crime and that this action's purpose is to "accomplish what should have taken place in 2008: the takeover and breakup of AIG by the federal government and the defendant's payment to the federal government and the State of New York of the full extent of damages that they have caused through their years of misdeeds." (Id.)

The federal and New York State governments declined to intervene in this qui tam action. (ECF No. 28-29.) All defendants filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 63, 67, 71.)

II.   LEGAL PRINCIPLES[1]

The FCA "imposes civil liability upon '[a]ny person' who, inter alia, 'knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval.'" Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 769 (2000) (quoting 31 U.S.C. § 3729(a)).[2] It also allows suits for "reverse false claims," where the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." U.S. ex rel. Taylor v. Gabelli, 345 F. Supp. 2d 313, 327 (S.D.N.Y. 2004) (quoting 31 U.S.C. § 3729(a)(7)); see also United States v. Raymond & Whitcomb Co., 53 F. Supp. 2d 436, 444 (S.D.N.Y. 1999) ("While a typical False Claims Act action alleges an excessive payment from the United States to the defendant, the statute also supports a 'reverse false claim' action alleging an insufficient payment to the United States from the defendant.") While these claims are cognizable under certain circumstances, relator here has failed to sufficiently allege "(1) that the defendant[s] made, used, or caused to be used

---

[1] To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In applying that standard, the court accepts as true all well-plead factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id.

[2] "In a qui tam action under the FCA, the plaintiff sues on behalf of and in the name of the government and invokes the standing of the government resulting from the fraud injury." United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1154 (2d Cir. 1993). "The qui tam plaintiff has the requisite personal stake in the outcome of the case to assure 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" Id. (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

record or statement to conceal, avoid, or decrease an obligation to the United States; (2) that the statement or record was false; (3) that the defendant[s] knew that the statement or record was false; and (4) that the United States suffered damages as a result." Raymond & Whitcomb Co., 54 F. Supp. 2d at 444-45 (quoting Wilkins ex rel. United States v. Ohio, 885 F. Supp. 1055, 1059 (S.D. Ohio 1995)).

In order to state a claim for fraud, under Rule 9(b), "[a]t a bare minimum, plaintiffs must state who said what to whom, and when and where they said it. Shadowy and suggestive gossip-column-style innuendos do not suffice. Further, the complaint must allege that the defendant intended to defraud, or at least allege facts creating an inference of fraudulent intent." Kolbeck v. LIT Am., Inc., 923 F. Supp. 557, 568 (S.D.N.Y. 1996), aff'd, 152 F.3d 918 (2d Cir. 1998) (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)); see also Fed. R. Civ. P. 9(b); id. ("Rule 9(b) applies with equal force to all claims of fraud—whether they arise under state law, the CEA, or other federal law." (citing Karasyk v. Marc Commodities Corp., 770 F. Supp. 824, 829 (S.D.N.Y. 1991)).

III. ANALYSIS

Each of relator's claims fails for lack of standing or for failing to state a valid claim under the FCA. And even if that were not the case, plaintiff's claims would be time-barred.

With regard to the mafia-related conduct, which apparently underlies the ostensible false claims, relator fails to demonstrate any basis in fact for his assertions. He alleges vaguely that, while in prison with "leading figures in New York Organized Crime families," he learned of AIG's "connection to Organized

4

Crime." (ECF No. 74 at 1.) Relator names no sources, and at no point does he plead facts to support the truth of the Mafia-related misconduct—he does not name a single "union[], construction compan[y], [or] construction-related service compan[y]" (ECF 27 at 30) that was allegedly under the Mafia's control as a part of this scheme. This is simply not enough to give rise to plausible misconduct.

Relator contends that, by failing to disclose this misconduct, defendants are liable under the FCA and federal securities regulations. But not once does relator sufficiently state a claim under these laws. He alleges both traditional and reverse false claims, but does not recount any specific false statement to secure a "payment" or to avoid an existing "obligation." (See Kolbeck, 923 F. Supp. at 568.) (For example, the 2006 settlement was and is not an "obligation" under the statute. See 31 U.S.C. § 3729(b)(3) ("[T]he term 'obligation' means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment.").) Count 3, for instance, which alleges a traditional false claim arising from TARP funding, is nothing more than conclusory, as is the wildly unfounded assumption that the government would not have entered into the 2006 settlement had it known about AIG's alleged Mafia connections. Allegations only that AIG failed to disclose "serious misconduct," without a demonstration that misconduct was at least plausible or an identification of one specific false claim that was made to the government, cannot survive a motion to dismiss.

5

Additionally, Counts 6, 8, and 9 focus on violations of federal securities regulations. Relator has no standing to bring these claims. Not one of the regulations named in the complaint allows for a private citizen to sue for enforcement on behalf of the United States. And relator does not otherwise have plausible standing; in other words, he has not sufficiently alleged a cognizable injury that would or could be redressed through this lawsuit.

Furthermore, even if relator did have standing, and even if he had sufficiently stated claims, the claims are time-barred. The federal FCA claims are subject to a six-year statute of limitations, 31 U.S.C. § 3731(b)(1), and the state FCA claims are subject to a ten-year statute of limitations, N.Y. State Fin. Law § 192(1). None of the FCA-related allegations focus on conduct that occurred within the statute of limitations; relator attempts to conjure up more recent dates in an effort to retrigger the limitations period, but he cannot circumvent the statutes in this way. It is not the case, as relator alleges, that every time AIG failed to disclose the alleged fraud, a new limitations period began. Relator's securities claims are also time-barred—federal statute imposes a five-year statute of limitations, 28 U.S.C. § 2462, and the securities-related misconduct is alleged to have occurred in the 1980s and 1990s.

IV. CONCLUSION

For the reasons set forth above, defendants' motions to dismiss are GRANTED, and the Second Amended Complaint is dismissed with prejudice. The Clerk of Court is directed to close the motions at ECF Nos. 63, 67, and 70.

SO ORDERED.

Dated: New York, New York
August 21, 2017

_____
KATHERINE B. FORREST
United States District Judge